# MICHAEL BYRNE

## .V.

# ALFRED I. HARTSHORN.

*Sales—Action to Recover for Lumber Alleged to have been Sold to Defendant and Delivered through a Contractor—Evidence—Question for Jury —Instructions.*

In an action to recover the value of lumber alleged to have been sold to the defendant and delivered through the contractor, who was building him a house, it is *held:* That an instruction to the effect that the acceptance and presentation by the plaintiff of an order by the contractor on the defendant was *prima facie* evidence that the contractor and not the defendant was originally liable, was erroneous, being in effect in view of the evidence an instruction to disregard the evidence of the plaintiff and find for the defendant; that an instruction to give the plaintiff's evidence in regard to oral statements of the defendant special scrutiny, was erroneous; that an instruction not applicable to any evidence in the case should not have been given; and that if evidence to show that the defendant had paid the full contract price of the house to other parties was improperly admitted, the error can be corrected on a new trial.

[Opinion filed December 11, 1886.]

APPEAL from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.

Statement by LACEY, J.   This was a suit brought by the appellant in December, 1883, to recover for a bill of lumber which he claimed to have sold to appellee and which was used by the latter in building his dwelling house, in the spring of 1882.   The bill was for $1,503.67.

Upon proper issues being joined the case was tried by a jury which found a verdict in favor of the appellee and this appeal is taken.   The appellant on the trial swore that he sold the lumber to appellee by an agreement with him that the lumber was to be charged to him and to be sent to him at the order of one Lamb, who was a building contractor and had entered into a contract with appellee to build him a house and

furnish the labor and materials for the sum of $3,900. The appellee, however, contends that he had no such contract with appellant but that Lamb purchased the lumber of appellant on his own account and that he had nothing to do with the dealings between appellant and Lamb.

The appellant, to maintain the issues on his side, produced himself as a witness and his books of account, showing that the lumber was all charged to appellee at the time it was procured and not to Lamb. He also testified that he had an express agreement with appellee that the lumber was to be sold to him and charged to him at Lamb's order, and that the lumber was so sent. The contract with appellee was made in May, 1882, about the time the contract was let by appellee to Lamb to build the house and before any lumber was furnished. Appellant also produced witnesses in corroboration of his own testimony to show certain statements made by appellee in their presence. These witnesses are James V. Caughlin, S. S. Fairfield and D. A. Lamb. Fairfield, whose shop was across the street from Byrne's office, testified to having a conversation with appellee before the house was commenced and bid on the work himself.

Afterward he had a conversation with him about the letting of the contract and appellee told him that there was a man whose figures were $800 or $900 less than witness's. He (possibly a week afterward) heard a conversation between appellant and appellee back of appellant's office near the sidewalk; witness was going across to pick up some lumber from four to ten feet from them. They were talking about the lumber for the house. Appellee said " to send the lumber and he would pay for it or see it paid." Appellee said something about going on Lamb's bond. John W. Caughlin, appellant's bookkeeper at the time, heard a conversation between appellant and appellee in the former's office just after a conversation outside the office in June, 1882, in which appellee said to appellant, "as I am going to pay for the lumber I want good lumber;" and appellant replied, " Mr. Hartshorn, if there is a stick or board goes out there that ain't satisfactory send it back." Also witness presented the bill in suit to appellee

for payment September 3, 1882, and told him the amount, and he said "Don't I want more than that?" I told him I didn't know that he would. "Well" says appellee; "that is all right, I will come up and see Mike."

And D. A. Lamb testified in behalf of appellant in rebuttal: "In early part of September, 1882, Hartshorn said to me that this lumber bill of Byrne's must be getting pretty large and asked me if I knew how much it was, and I told Hartshorn it was about $1,500." Witness had another conversation with appellee after that about the cost of the work done on the house by witness, and appellee said to him, "There is that lumber bill of Byrne's of $1,500; that must be paid."

The appellee denied on the witness stand that he had ever authorized appellant to let Lamb have lumber on his account. He also denied the conversation with Caughlin when the bill of appellant was presented for payment. Lamb didn't do much after September 9th, after the plastering went on. Appellee also denied the conversation with Lamb in the manner Lamb had testified to.

The appellee was corroborated by the testimony of one Horace W. Scholfield, who testified to having a conversation with appellant in regard to sending for the doors and blinds for the appellee's house, in presence of Caughlin, in which appellant said he would not furnish them; that "Lamb had got every dollar's worth of lumber on that job or any other unless he paid in advance." The evidence showed that appellant had accepted an order from D. A. Lamb, the contractor, on the appellee, about September 8, 1882, for $1,503.67 for this lumber bill, and which appellee refused to accept or pay.

The above was substantially the case as it appeared before the jury, with the exception of some of the attending circumstances given in evidence.

Messrs. DUNCAN & O'CONNER, for appellant.

It is not for the court to instruct the jury in a case where the evidence is conflicting, or indeed in any case, as to what evidence is the strongest. The jury in a civil suit should find from the preponderance or greater weight of the evidence,

and for such purpose they should ascertain the value of the evidence before them, and in so doing the interference or direction of the court is not required or allowed.   The weight of the evidence is a matter with which the court is not in any manner concerned.   Frizelle v. Cole, 42 Ill. 362 ; Chittenden v. Evans, 41 Ill. 251 ; T., W. & W. R'y Co. v. Brooks, 81 Ill. 245 ;  Hartley v. Lybarger, 3 Ill. App. 524;  Straubher v. Mohler, 80 Ill. 21;  Wright v. Bell, 5 Ill. App. 352 ; L. N. A. & C. R'y Co. v. Shires, 108 Ill. 632 ; Smith v. C. & W. I. R'y Co., 105 Ill. 521.

The seventh instruction given for appellee was misleading, ambiguous and improper under the issues, and is not authorized by the evidence adduced.

Instruction summing up the facts which the testimony tends to prove on one side and omitting all on the other is erroneous.   Pa. Co. v. Stoelke, 104 Ill. 201; Armfield v. Humphrey, 12 Ill. App. 90;  Cushman v. Cogswell, 86 Ill. 62; Ogden v. Kirby, 79 Ill. 555.

When there is evidence tending to prove a fact having an important bearing upon the law of a case, even though strongly contradicted, an instruction is erroneous which ignores the existence of such fact.   C. I. F. Co. v. Bradley, 10 Ill. App. 328; Chi. Pkg. & Prov. Co. v. Tilton, 87 Ill. 547–553.

Where an instruction undertakes to canvass the salient features of appellee's evidence and calls attention particularly to it, to the exclusion and detriment of the evidence of appellant, such instruction is erroneous.   Anderson v. Warner, 5 Ill. App. 416; Wright v. Bell, 5 Ill. App. 352; Frame v. Badger, 79 Ill. 441;  Martin v. Johnson, 89 Ill. 537.

Messrs. E. F. BULL and G. S. ELDREDGE, for appellee.

LACEY, J.   The main cause assigned for error by appellant's counsel is the giving by the court the seventh, tenth and twelfth instructions for appellee : the allowing the appellee to prove against appellant's objection that the former had paid out the full sum of the contract price, $3,900, which he was to pay Lamb for furnishing materials and labor for build-

ing the house, to Lamb and other parties on Lamb's account, and that the verdict was manifestly against the weight of the evidence. We will notice the seventh instruction given for appellee first because first in order.

The substance of this instruction is that the order accepted by the appellant for $1,503.67 from Lamb, for the bill of lumber sued on, drawn on the appellee, dated September 8, 1882, and presented to appellee by appellant for payment, was by virtue of such acceptance and presentation, *prima facie* evidence and established the fact *prima facie* that D. A. Lamb and not the appellee was originally liable to the plaintiff for such lumber. By this instruction the question mainly in issue, whether or not the appellee purchased the lumber of appellant as charged, was established to exist *prima facie* in the former's favor from and after the date of the acceptance and presentation in September, 1882. There was no dispute as to the acceptance and presentation of the order at that time or that the lumber was furnished on Lamb's order. This instruction virtually shuts out from the consideration of the jury, all plaintiff's evidence touching facts existing prior to the establishing of such *prima facie* case, and the defense must be regarded by the jury as completely successful unless the appellant could adduce evidence of facts subsequently occurring that would have the effect to overcome such *prima facie* case; and as there was no such evidence, it was the duty of the jury under the instruction to find for the appellee.

The effect of the instruction was, in view of the evidence presented, to command the jury to find for the appellee. The instruction did not present the law of the case and gave the mere fact that the appellant had accepted and presented the order, an exaggerated importance. The value of the fact of the acceptance and presentation of the order was nothing more than rebuttal evidence in appellee's favor, tending to show that the appellant in fact gave Lamb the credit and not appellee, and tending to establish the contention of the latter. The weight that should be given to it ought to rest with the jury. It was a fact to be considered in connection with all the other evidence in the case.

Byrne v. Hartshorn.

According to appellant's theory the order was taken as a means only of collecting the debt due from appellee to him, but because the payment of the claim by appellee to him would extinguish so much of the debt of appellee to Lamb under his contract, it was essential to have Lamb satisfied and the matter settled with his consent, which his giving the order would effectuate. The giving the order may have been consistent with appellant's contention that the credit was given to appellee for the lumber.

The appellee, of course, contends that it was proof that the appellant had acknowledged that he had no claim against him, otherwise he would not have taken an order. There may be other considerations for and against on both sides, which the jury had a right to consider. It was for the jury to settle the matter as to what weight should be given to this particular part of the evidence, instead of being compelled by the instruction to give it the effect of excluding all other evidence in the case up to that time. The position that every plaintiff and every defendant occupies in every case is that before the introduction of evidence there is a *prima facie* presumption in defendant's favor and the plaintiff must overcome that by evidence. This was the only *prima facie* case that could have existed in favor of appellee and it would remain until the evidence was all introduced, when it was for the jury to say whether it had been overcome by a preponderance.

The 12th instruction given by the court for appellee is particularly complained of by appellant. It is thought that the instruction unjustly discriminates against that portion of the appellant's evidence that rests in the proof of the admissions of appellee in reference to the main fact in issue. The instruction is as follows: " The jury are instructed that they should examine with care all the evidence in this case; that especially is this so in relation to all such parts of the evidence as exist in oral statements of defendant testified to by other witnesses in the case. The jury should consider whether such evidence may or may not be subject to much imperfection and mistake ; whether the speaker may have been misunderstood by the witness; whether the speaker

may not have correctly expressed his own meaning; whether the witness may have forgotten a part of the language used or may use some expression which may change the meaning of the speaker, or the witness may have added a word or expression not used by the speaker or may have a word or expression used by the speaker which changes the meaning of the speaker."

We think it was erroneous to give this instruction. Aside from the requirement of the instruction to give the *appellant's* evidence in regard to oral statements of *appellee especially* close scrutiny, the instruction tended strongly to weaken the force of the appellant's evidence and to lead the jury to think that the court was of the opinion that the class of evidence introduced was of the very weakest nature. Nearly every imaginable suggestion was offered to the jury in regard to the manner in which they should *especially* be watchful to prevent deception. There was nothing in the nature of the evidence as given to suggest that it was liable to deceive in the matters suggested by the instruction and to which such pointed attention was called.

It seems that the instruction was suggested to counsel by an examination of the comments of law text writers upon the nature of admissions in which much of the language of the text is employed. Starkie on Evidence; Sharswood's notes, marginal pages, 325–7; Greenleaf on Evidence, Vol. 1, Sec. 200. This would not justify an instruction of this kind under the practice in this State where the jury are the sole judges of the weight to be given to the evidence.

In these same texts the commentators say that this class of evidence is "the weakest and most unsatisfactory," yet it has often been held that to give an instruction based on such a rule as announced by the text books, is error. Mauro v. Platt, 62 Ill. 450; Wright v. Bell, 5 Ill. App. 352; Rockwood v. Poundstone, 38 Ill. 199; Frizelle v. Cole, 42 Ill. 362, and other cases. This class of evidence may be the weakest of all evidence yet it may be the strongest especially when the admissions are clearly established. It may be the most convincing. The jury was not even told in the instruction that such

Byrne v. Hartshorn.

was the law.   We hold the court erred in giving the instruction complained of.

The jury were told in the tenth instruction that the minds of the parties must meet in order to make a binding contract, and that the terms and conditions thereof must be understood and assented to by each party.   While this is true as a general rule, there was nothing in this case to call for such an instruction.   If there was any such agreement as the appellant testified to, their minds met beyond question, and there was nothing in the nature of the alleged contract to suggest that they did not readily understand the meaning of it.   The appellee denies the entire story as told by appellant in every part in regard to his agreement to pay for the lumber and have it furnished to him.   The instruction was not applicable to any evidence in the case and should not have been given.   We would not be willing to reverse the judgment for such error alone, but nevertheless the instruction ought not to have been given.

In regard to the point raised that the court erred in the admission of the evidence going to show that appellee had paid out to other parties the full contract price for the building, the appellee, while not claiming that it would have been proper, as we do not think it would, asserts that it was admitted without objection; and to the greater part we see no objection noted and suppose there was none.   As the judgment is to be reversed it will be unnecessary to comment on the matter further, supposing that such alleged error, if made, will be corrected on a new trial.

As to the weight of the evidence, we will refrain from discussing that for the reason that the case may be again tried.

For the errors above noted the judgment is reversed and the cause remanded.

*Judgment reversed and cause remanded.*